Original,
No. 4306.

CARROLL A. HILL & a., *Selectmen of Conway*

*v.*

OLIVER W. MARVIN & a., *Tax Commission of the State of New Hampshire.*

Argued March 5, 1954.

Decided March 31, 1954.

*Upton, Sanders & Upton (Mr. Richard F. Upton* orally), for the plaintiffs.

*Louis C. Wyman,* Attorney General, and *Warren E. Waters,* Deputy Attorney General (*Mr. Waters* orally), for the defendants.

*H. Thornton Lorimer* and *Thomas F. Shannon* (*Mr. Shannon* orally), for the petitioning taxpayers.

DUNCAN, J. The public interest in expeditious settlement of the

question presented by the petition warrants exercise by this court of its original jurisdiction under R. L., c. 369, s. 2. *Nelson* v. *Morse*, 91 N. H. 177. The petition presents the relatively narrow question of whether the Tax Commission may in its discretion order a reassessment under R. L., c. 82, ss. 12-17 to take effect upon April 1, next following, or whether its authority under the statute is limited to reassessment of taxes assessed prior to entry of the order.

The evidence establishes that the warrant for 1953 taxes in Conway was submitted to the collector on August 29, 1953. Tax bills were sent out on or about September 1, taxes were thereafter paid, and all taxes not paid by December 30, 1953, were sold by the collector. At the sale the town purchased real estate taxed in the aggregate sum of $15,590.79, and individuals purchased $2,074.17. "Hardship, administrative inconvenience, and possible absurd results" which will arise from these circumstances are among the reasons advanced for the contention that the Legislature intended to permit reassessment to be made either prospectively or retrospectively, depending upon circumstances existing at the time of the order.

The authority of the Commission with respect to "reassessment" is to be found in the following sections of R. L., c. 82:

"12. RE-ASSESSMENT. The Commission shall receive complaints and carefully examine into all cases where it is alleged that property subject to taxation has not been assessed, or has been fraudulently or for any reason improperly or unequally assessed, or the law in any manner evaded or violated, and may order reassessments of any or all real and personal property, or either, in any assessment district, when in the judgment of the commission such re-assessment is advisable or necessary, to the end that all classes of property in such assessment district shall be assessed in compliance with the law.

"13. PROCEDURE FOR RE-ASSESSMENT. Such re-assessment shall be made in the first instance by the selectmen or assessors of such district, and, if such re-assessment is not made within thirty days of the order or is not satisfactory to the tax commission, then the commission may make such re-assessment or cause it to be made."

Section 12 was enacted in 1911, when the Tax Commission was first established. Laws 1911, c. 169. Previously there had been provision for the equalization of assessments as between towns and cities (P. S., c. 63), but this process did nothing to produce equality as between individual taxpayers. Report of New Hampshire Tax

Commission of 1908, *p.* 201. Abatements in individual cases served to achieve proportionality, but did not operate to correct under-valuations. See *Winnipiseogee &c. Co.* v. *Laconia,* 74 N. H. 82. Laws of 1911, chapter 169, was designed to remedy this defect. Report, *supra, p.* 202.

Evidence of administrative construction of the statute (*Wyatt* v. *Board of Equalization,* 74 N. H. 552, 569, 570) in the early days of the Tax Commission does not clearly indicate its interpretation of the statute as applied to the circumstances of this case. *Cf.* Report of N. H. State Tax Commission, 1911, *pp.* 29, 30. In the report of 1930, revaluation by the Commission in prior years was alluded to, but we are not informed whether this was by reassess-ment under *s.* 12, or if so, whether it took effect when made, or for the ensuing year. Report of N. H. State Tax Commission, 1930, *p.* 3. Voluntary reappraisals without order of the Commission may have been made. See *Stocklan* v. *Brackett,* 95 N. H. 227, 229.

The language of the statute makes it apparent that the term "reassessment" is broadly used to include both the process more technically known as "reappraisal," and the computation of the tax. The authority given is to order reassessments of "property" so that "all classes of property" shall be assessed according to law. *S.* 12. Section 15, however, which was enacted in 1913 (Laws 1913, *c.* 223) requires the selectmen or assessors to "assess the taxes" in accordance with the reassessment when it is returned to the town clerk. And since the authority of the Commission may be exercised upon complaint of nonassessment as well as of unequal assessment (*s.* 12, *supra*), the process of reassessment may well be considered to comprehend assessment of the tax as well as the "property." *S.* 12. So far as the language of sections 12-17 is concerned, reassessment or reappraisal might be ordered by the Commission in this case for the purpose either of correcting the assessment of 1953 or of establishing an assessment for 1954 as the plaintiffs contend. Other provisions of the law relating to taxation however point to the conclusion that a "reassessment" was intended to replace or modify an assessment previously made, rather than to establish an original assessment for the coming year.

For over a century before 1911, *Art.* 6, Pt. II, of the Constitution provided, as it does now, that "there shall be a valuation of the estates within the state taken anew once in every five years, at least, and as much oftener as the general court shall order." And since 1876 at least, the General Court has provided by what is now

R. L., c. 76, s. 8, that assessors and selectmen shall "in the month of April in each year" examine all the real estate in their respective municipalities and "reappraise" all that has changed in value in the year next preceding and that such "new" or "corrected" appraisal is to be made a part of the invoice. Laws 1876, c. 27. By R. L., c. 77, s. 1, all taxes "for any year following April first shall be assessed upon the invoice taken in that month." See also, R. L., c. 75, s. 1.

Thus before enactment of the statute of 1911 provision was made for reappraisal by the selectmen, to be made in April of each year. It would seem to follow that reassessment by order of the Tax Commission provided for by Laws of 1911 was intended to correct appraisals already made, rather than merely to reinforce by administrative order an existing statutory requirement for annual reappraisal.

Other provisions of the 1911 statute authorized the Commission to prescribe forms for inventories, and for invoices to be used by selectmen; to exercise "general supervision over the administration of the assessment and taxation laws of the state and over all assessing officers"; and to advise and direct such officers in their duties. R. L., c. 82, s. 11 (I), (VI), (VII). Thus the provisions of sections 12-17 were unnecessary to vest in the Commission control over the "reappraisal" required by R. L., c. 76, s. 8. Moreover, it seems unlikely that a reassessment by order of the Commission, which might be completed in October, was intended to be considered as "an original assessment" (s. 15) for the *following* tax year, subject to appeal "as from the original assessment." S. 17. Thus construed, the statute would conflict with other provisions requiring appraisals to be made by the selectmen in April of the tax year. Furthermore if the reassessment were to be *"the* original assessment" for the following year, section 17 would be superfluous. *Cf.* R. L., c. 77, ss. 13, 14. Since the Commission is authorized to supervise and direct the assessment for a coming year, it is a fair inference that "reassessments" under section 12 were intended only for correction of assessments previously made.

It remains to consider the bearing of practical objections standing in the way of such a correction, where, as in this case, reassessment is ordered after the warrant has gone to the collector. It is to be assumed that such objections were taken into account by the Commission in making its order, since entry of the order was discretionary, to be made when "advisable or necessary" in its

judgment. *S*. 12, *supra*. The objections which are most readily apparent present no insuperable obstacle. It is to be expected that changes in appraisal values will occur. As already noted, the statute provides that the reassessment "shall . . . be treated as an original assessment" (*s*. 15) subject to the same right of appeal as from "the original assessment." *S*. 17. Obviously, however, taxpayers may not be required to pay the same tax a second time. See *Page* v. *Claggett*, 71 N. H. 85, 87. Where the tax as reassessed is increased, credit must be given for the tax already paid. To the extent that payments made will partially satisfy the tax as determined on reassessment, the original tax for 1953 will stand as valid and satisfied *pro tanto*. Any lien or further right with respect to that portion of the tax has been extinguished by payment, and a warrant may issue to the collector for the supplementary tax only. R. L., *c*. 77, *ss*. 7, 9; Laws 1947, *c*. 221. *Cf*. Morrison, N. H. Town Officer (1886) *p*. 221. The statutory lien securing payment of the reassessed tax will secure only the unpaid balance and will continue until one year from October 1 following its assessment as the statute provides. R. L., *c*. 80, *s*. 17. Supplementary taxes not seasonably paid may be enforced by sale of the real estate for the amount of the unpaid supplementary tax. *Id*., *s*. 18. Reassessments which produced a smaller tax than that paid will call for refunds of the excess paid. See *Winnipiseogee &c. Co*. v. *Laconia*, 74 N. H. 82, 84.

Inconvenience and uncertainties may arise in case a particular property has changed hands since payment of the original tax. Purchasers at the last tax sale may be entitled to refunds in which case the amount required for redemption (R. L., *c*. 80, *s*. 27, as amended) will be reduced accordingly. No reason appears why suitable amendments of the records of such proceedings (R. L., *c*. 80, *s*. 24) may not be made in the registry. Doubtless problems not now readily apparent will be encountered in individual cases. If so, they must be solved as they arise.

The procedures to be followed in making the reassessment effective follow as a natural incident of making it. It is true that some would have been avoided had the reassessment been made or ordered before delivery of the original list and warrant to the collector. Since the Legislature imposed no time limit within which a reassessment should be made, it must be deemed to have anticipated the inevitable results of a late correction. The practical objections are not of such weight as to overbalance the previously

noted indications that reassessment was intended to be retrospective. It follows that the Tax Commission correctly construed the statute, and there was no error of law in its exercise of its discretion to order the reassessment.

*Petition dismissed.*

KENISON, C. J., did not participate; the others concurred.