Original,
No. 4921.

WILLIAM H. PERRY *& a v.* STATE TAX COMMISSION.

Argued March 7, 1961.

Decided April 19, 1961.

*Paul A. Rinden* (by brief and orally), for the plaintiffs.

*Daniel E. Donovan, Jr.,* city solicitor, and *Sulloway, Hollis, Godfrey & Soden (Mr. Godfrey* orally), for the city of Concord.

*Gardner C. Turner,* Attorney General, and *William J. O'Neil,* Assistant Attorney General (*Mr. O'Neil* orally), for the State.

WHEELER, J. The plaintiffs contend that the raising of valuations in ward 8 and part of ward 2 of the city and not in other wards where property has also increased in market value has caused the plaintiffs' property to be assessed at a higher ratio than that of other taxpayers and has placed upon them a disproportionate burden of taxation producing a result which is arbitrary, illegal and in violation of *Art.* 5th, Pt. II, N. H. Const.

The statute invoked (RSA 71:12) provides: "RE-ASSESSMENTS. The commission shall receive complaints and carefully examine into all cases where it is alleged that property subject to taxation has not been assessed, or has been fraudulently or for any reason improperly or unequally assessed, or the law in any manner evaded or violated, and may order re-assessments of any or all real and personal property, or either, in any assessment district, when in the judgment of the commission such re-assessment is advisable or necessary, to the end that all classes of property in such assessment district shall be assessed in compliance with the law."

The last general reappraisal of all the property in the city of Concord was made in 1951 by a professional appraisal company. According to the evidence the assessments for that year were 65-70% of market values while the ratio today is about 50-55%.

Since 1951 the assessors, because of area expansion, have made area appraisals in certain sections of the city as a result of changes

in these areas. The downtown area was recently reappraised. Other areas were revalued in 1958 and 1959. In 1960 property in ward 4 was revalued which resulted in a 74% increase in the assessment value. There are no present plans to revalue the city as a whole but areas which "become out of focus" because of changes in character will be selected from time to time for reappraisal.

The area known as the "Heights" which includes ward 8 and part of ward 2 was selected for reappraisal because in the opinion of the chief assessor "there were probably the most profound changes in that area . . . enough to warrant a study." In deciding to re-evaluate this area the assessors considered the valuation of the property in the rest of the city based on their knowledge of sales of other property and a study of general market conditions.

The plaintiffs' expert selected ten pieces of property throughout the city outside of ward 8 which had been sold twice since 1951. The average ratio of assessed valuation to market value as disclosed by these sales was 41.2%. This witness did not make a study to ascertain whether the 1960 appraisal of the "Heights" was at a different ratio from the assessed valuation of other properties throughout the city, and the evidence failed to establish that it was. One piece of property in ward 8 which had been sold twice since 1951 showed a ratio of assessed valuation to market value of approximately fifty per cent.

The scope of certiorari is limited to the determination of whether the administrative body has acted "illegally in respect to jurisdiction, authority or observance of the law." *Winn* v. *Jordan*. 101 N. H. 65, 67. The plaintiffs are not entitled to a trial *de novo* on the facts and the only relief available in these proceedings is the correction of any errors of law. The legal problem before the court is whether the findings of the Tax Commission could reasonably be made. *Sinkevich* v. *Nashua,* 97 N. H. 262.

The provisions of RSA 71:12 are permissive and not mandatory and authorize reassessment by the Tax Commission "when in the judgment of the commission such re-assessment is advisable or necessary, to the end that all classes of property in such assessment district shall be assessed in compliance with the law." *Hill* v. *Marvin,* 98 N. H. 519, 523-524.

It could be found that the assessors did not single out the "Heights" area for revaluation in a capricious or arbitrary manner but because this area in the judgment of the assessors was "out of focus" with the rest of the city.

The plaintiffs contend that re-evaluation of only certain sections

of the city rather than reassessment of the city as a whole necessarily produced inequality and was illegal. This contention presents an issue of fact as to whether the new assessments cast upon the owners of the properties more than their proportionate share of the tax burden. *Rollins* v. *Dover*, 93 N. H. 448. It is the duty of assessors to reassess any property when in their judgment the assessment is out of proportion with other assessments in the city. In revaluation of the "Heights" area some assessments were increased, some were unchanged, and some were lowered. The record contains no evidence that the assessments so established in the "Heights" area are at a different ratio to market value from the ratio of all of the assessments in the rest of the city.

The average ratio of assessments to sale prices or market values of the ten properties selected by plaintiffs' expert for study was lower than the average ratio for the city to which the chief assessor testified; but the latest sales of these properties occurred over a period ranging from September 1958 to October 1960 and did not necessarily establish a standard as of April 1, 1960 for the city as a whole. The "average percentage increase . . . in sales price" of the same properties (26.3%), relied upon by the plaintiffs, appears to lack significance because of the diversified dates of the first and last sales of the several properties. Moreover if this percentage increase were thought to indicate the probable increase in the average market value of properties generally throughout the city, it tended to support the testimony of the chief assessor that average market value has increased so as to result in a current ratio of 50 to 55%. According to the evidence the ratio in 1951 was 65%. Thus an over-all increase in market value of 26.3% as of 1960, with no change in the 1951 assessments would produce a ratio of slightly over 51% in 1960.

The record of the proceedings before the Commission fails to establish the essential fact that the 1960 ratio of assessments to market value for the plaintiffs' properties exceeded the ratio for other property. *Hodges* v. *Kensington*, 102 N. H. 399; *Rollins* v. *Dover*, *supra*. We cannot say as a matter of law that the Commission's action in dismissing the petition was unwarranted by the record or is shown to have been arbitrary or illegal. In view of the result reached it is unnecessary to consider the propriety of the remedy sought.

*Petition dismissed.*

All concurred.