Board of Taxation
No. 81-110

APPEAL OF WOOD FLOUR, INC. & a.
(New Hampshire Board of Taxation)

November 16, 1981

*Michael P. Bentley*, of Keene, by brief and orally, for Francis C. Gutoski and Jennie L. Gutoski.

*Faulkner, Plaut, Hanna, Zimmerman & Freund*, of Keene (*George R. Hanna* on the brief and orally), for the Town of Winchester.

BOIS, J. In 1980, selectmen for the Town of Winchester abated the real estate taxes for the years 1978 and 1979 on certain property owned by Francis and Jennie Gutoski. The issue in this case is whether the State board of taxation had jurisdiction to hear an appeal by a group of Winchester taxpayers, who challenged the legality of the abatement. We find that jurisdiction existed.

Wood Flour, Inc. owned the real estate in question in 1978 and for most of 1979. In 1978, the town assessed real estate taxes on the property in the amount of $4,100. The assessment for 1979 was only $946 because a fire had substantially damaged the property and its buildings after the 1978 assessment. In late 1979, with these tax bills outstanding, Wood Flour, Inc. conveyed the property to the Gutoskis, who assumed and agreed to pay all outstanding obligations.

Following a discussion with the Gutoskis, the Winchester selectmen, on January 3, 1980, abated the entire 1978 tax and approximately two-thirds of the amount of the 1979 tax which they had assessed against the property formerly owned by Wood Flour, Inc. The stated reason for the abatements was dissolution of the corporation. This statement was erroneous because no dissolution of Wood Flour, Inc. had occurred at or prior to that time.

Following the abatement order, a group of Winchester taxpayers petitioned the State board of taxation pursuant to RSA 71-B:16 I (Supp. 1979). They argued that the selectmen had illegally and improperly abated the 1978–79 taxes on the Wood Flour, Inc./Gutoski property. Finding this argument persuasive, the board vacated the abatements in November 1980 and, after a rehearing, reaffirmed its decision in March 1981.

The Gutoskis appealed from the action of the board of taxation, and the Town of Winchester now represents the position of the Winchester taxpayers' group who originally complained to the board. While acknowledging that the board has jurisdiction to review tax assessments under RSA 71-B:16 I (Supp. 1979), the Gutoskis claim that it lacks jurisdiction to examine abatements granted by selectmen. They further argue that the board lacked jurisdiction because the complaining taxpayers' group failed to comply with the provisions of RSA 71-B:16 I (Supp. 1979), which require taxpayers to file a written complaint with the board within ninety days after issuance of the original tax bills.

RSA 71-B:16 (Supp. 1979) provides in pertinent part:

"Order For Reassessment. The board may order a reassessment of taxes previously assessed . . . [on] any taxable property in the state:

I. When a specific written complaint is filed with it, by a property owner, within ninety days of the date on which the last tax bill . . . is sent by the collector of taxes of the taxing district, that a particular parcel of real estate . . . not owned by him has been fraudulently, improperly, unequally or illegally assessed. . . ."

██ Although these provisions were recently embodied in RSA 71-B:16 (Supp. 1979), they formerly existed in virtually identical form as RSA 71:12. In reference to RSA 71:12, we have stated "that the term 'reassessment' is broadly used" and that the statute gives the tax commission (now the board of taxation) "authority . . . to order reassessments of 'property' so that all 'classes of property' shall be assessed according to law." *Hill v. Marvin,* 98 N.H. 519, 522, 104 A.2d 200, 202 (1954); *see Perry v. State Tax Comm'n,* 103 N.H. 264, 266, 169 A.2d 765, 767 (1961) (quoting *Hill v. Marvin,* 98 N.H. at 522, 104 A.2d at 202). We have further held that "the authority of the Commission [board of taxation] may be exercised upon complaint of nonassessment as well as of unequal assessment. . . ." *Hill v. Marvin,* 98 N.H. at 522, 104 A.2d at 202. In addition, during the enactment of the current version of RSA ch. 71, a House Committee indicated that the board of taxation was established to decide "questions of tax assessments *and other matters of law.*" (Emphasis added.) N.H.H.R. JOUR. 1318 (1973). The board of taxation thus has broad authority to remedy the inequities of improper and illegal taxation.

 We hold that the board's broad authority encompassed jurisdiction to hear the petitioning taxpayers' group's appeal. RSA 71-B:16 (Supp. 1979) contains clear language that "the board may order a reassessment of taxes previously assessed." As noted, the general thrust of the statute is to promote the legality of real estate taxes. The legislature obviously intended the board to scrutinize the legality of abatements as rigorously as it reviews the lawfulness of assessments. Therefore, consistent with our liberal construction of the statute in *Hill v. Marvin,* 98 N.H. at 522, 104 A.2d at 202, we interpret the phrase "taxes previously assessed" to permit administrative review of taxes which have also been previously abated.

The Gutoskis base their argument on this court's rulings in *Cassube v. Maynard,* 112 N.H. 229, 293 A.2d 594 (1972) and *Manchester v. Furnald,* 71 N.H. 153, 51 A. 657 (1901). In *Cassube,* we held that neither an individual nor a city had a right to judicial review of a board of taxation ruling. *Cassube v. Maynard,* 112 N.H. at 231, 293 A.2d at 595. The decision in *Cassube* is clearly distinguishable from the present case. The *Cassube* decision did not address the board of taxation's authority to review rulings by town selectmen; it involved judicial review of a board of taxation ruling. The present case, in contrast, examines the jurisdiction of the board of taxation to review decisions by town selectmen. For these reasons, we find the *Cassube* holding inapplicable to this case.

The *Furnald* decision, handed down in 1901, is also irrelevant to the present controversy because it arose prior to enactment of RSA 71-B:16 (Supp. 1979) (the controlling statute in this case) and its predecessor, RSA 71:12, which was adopted in 1911. We find, in sum, no support for the Gutoskis' argument that the board lacks jurisdiction to review abatement orders.

■ We further hold that the Winchester taxpayers' group substantially complied with the procedural requirements of RSA 71-B:16 I (Supp. 1979) when they filed their complaint within ninety days of the abatement order. Although the statute technically requires filing within ninety days after issuance of the original tax bill, the Winchester taxpayers' group did not object to the original assessment. They had no grievance until the selectmen, more than ninety days after issuance of the original bills, ordered the abatement of the previously assessed taxes. They therefore could not reasonably have been expected to file a complaint within ninety days after issuance of the original bills.

■ We must construe the provisions of RSA 71-B:16 I (Supp. 1979) consistent with the spirit and objectives of the legislation as a whole. *See Nazzaro v. Merrimack School Dist.*, 118 N.H. 287, 290, 385 A.2d 230, 232 (1978); *State v. Muscarello*, 92 N.H. 214, 215, 29 A.2d 115, 116 (1942) (quoting *Opinion of the Justices*, 66 N.H. 629, 655, 33 A. 1076, 1090 (1891)). It would be unjust and contrary to the remedial spirit of RSA 71-B:16 (Supp. 1979) to bar the taxpayers' group's appeal on the grounds of untimeliness in the filing of their complaint, as alleged by the Gutoskis. *See Langford v. Town of Newton*, 119 N.H. 470, 473, 403 A.2d 414, 416 (1979).

*Appeal dismissed.*

All concurred.